**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WALTER PICKETT, individually, and on behalf of others similarly situated, | |
| Plaintiff, | No. 17 Civ. 1013 |
| v. | Hon. Matthew F. Kennelly |
| SIMOS INSOURCING SOLUTIONS, CORP., a Georgia corporation, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>CERTIFICATION OF SETTLEMENT CLASSES</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.      Factual and Procedural Background ................................................................ 2

II.     Summary of Settlement Terms ........................................................................ 2

        A.      The Settlement Fund ........................................................................... 2

        B.      Eligible Class Members ...................................................................... 2

        C.      Releases ............................................................................................... 2

        D.      Allocation Formula ............................................................................. 3

        E.      CAFA Notice ...................................................................................... 3

        F.      Settlement Administration .................................................................. 3

        G.      Objections and Opt-Outs .................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.      The Settlement Classes Meet the Legal Standard for Class Certification ......... 4

        A.      Numerosity .......................................................................................... 5

        B.      Commonality ....................................................................................... 5

        C.      Typicality ............................................................................................ 6

        D.      Adequacy of the Named Plaintiff ....................................................... 6

        E.      Certification Is Proper Under Rule 23(b)(3) ...................................... 7

                1.      Common Questions Predominate ............................................ 7

                2.      A Class Action Is a Superior Mechanism ............................... 7

II.     The Proposed Settlement Is Fair, Reasonable and Adequate ........................... 8

        A.      The Settlement Is Fair, Reasonable, and Adequate ............................ 9

                1.      The Settlement Amount Is Substantial Given the Strengths of
                        Plaintiff's Claims and Attendant Risks (Factor 1) .................... 10

                2.      Litigation Would Be Complex, Costly, and Long (Factor 2) ......... 12

ii

3.      The Reaction of the Class Members Have Been Positive (Factor 3)........ 13

4.      Competent Counsel Endorse this Settlement Agreement (Factor 4) ........ 13

5.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5) .................................................................... 14

6.      Defendant's Ability to Withstand a Greater Judgment is Unknown and Does Not Preclude Settlement Approval ................................................... 15

CONCLUSION.................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                         **PAGE(S)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................9

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 ........................................................................................................................7, 8

*In re Austrian and German Bank Holocaust Litig.*,
    80 F. Supp.2d 164 (S.D.N.Y. 2000) ....................................................................................15

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009) ...........................................................................................5

*Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*,
    No. 15 Civ. 120, 2016 WL 3247872 (N.D. Ind. June 13, 2016) ..........................................11

*Delmoral v. Credit Prot. Ass'n, LP*,
    No. 13 Civ. 242, 2015 WL 5793311 (E.D.N.Y. Sept. 30, 2015) ..........................................11

*Domonoske v. Bank of Am., N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ..................................................................................12

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ..........................................................................................9, 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) ...............................................................................................10

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .................................................................................................9

*Feist v. Petco Animal Supplies, Inc.*,
    218 F. Supp. 3d 1112 (S.D. Cal. 2016) ................................................................................11

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ...............................................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................................................5

*Hargrett v. Amazon.com DEDC LLC*,
    No. 15 Civ. 2456, 2017 WL 416427 (M.D. Fla. Jan. 30, 2017) ..........................................11

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997) .....................................................................................13

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014)................................................................13

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .............................................................9, 11, 13, 15

*Katz v. ABP Corp.*,
  No. 12 Civ. 4173, 2014 WL 4966052 (E.D.N.Y. Oct. 3, 2014) ......................7, 14

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) .............................................................................5

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) .............................................................................8

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 14 Civ. 238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ....................6, 8, 12

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987) .............................................................................9

*McDonald v. Chic. Milwaukee Corp.*,
  565 F.2d 416 (7th Cir. 1977) .............................................................................9

*Meza v. Verizon Commc'ns, Inc.*,
  No. 16 Civ. 739, 2016 WL 4721475 (E.D. Cal. Sept. 9, 2016)...........................11

*Nicholson v. UTI Worldwide, Inc.*,
  No. 09 Civ. 722, 2011 WL 1775726 (S.D. Ill. May 10, 2011) .................................7

*Patterson v. Gen. Motors Corp.*,
  631 F.2d 476 (7th Cir. 1980) .............................................................................6

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976), .......................................................................9, 10

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) .............................................................................7

*Retired Chic. Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) .................................................................................6

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ...........................................................................12

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ...........................................................................5

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ......................................................................................11

*Syed v. M-I, LLC*,
   853 F.3d 492 (9th Cir. 2017) ............................................................................11

*Syed v. M-I LLC*,
   No. 14 Civ. 742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016) .................................12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ............................................................................10

*Taifa v. Bayh*,
   846 F. Supp. 723 (N.D. Ind. 1994), *aff'd sub nom Isby*, 75 F.3d ...........................14

*Thomas v. FTS USA, LLC*,
   193 F. Supp. 3d 623 (E.D. Va. 2016) ..................................................................11

*Thomas v. FTS USA, LLC*,
   312 F.R.D. 407 (E.D. Va. 2016) .......................................................................5, 8

*Wahl v. Midland Credit Mgmt., Inc.*,
   243 F.R.D. 291 (N.D. Ill. 2007).........................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................9

*Watkins v. Hireright, Inc.*,
   No. 13 Civ. 1432, 2016 WL 1732652 (S.D. Cal. May 2, 2016) ............................12

*White v. First Am. Registry, Inc.*,
   No. 04 Civ. 1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ............................12

*Yuzary v. HSBC Bank USA*,
   No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................14

*Zolkos v. Scriptfleet, Inc.*,
   No. 12 Civ. 8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015).......................13, 14

**STATUTES**

15 U.S.C. § 1681n.............................................................................................12

28 U.S.C. § 1715(d) ..........................................................................................3

Class Action Fairness Act...................................................................................3

FCRA ................................................................................................... *passim*

FDCPA..................................................................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

## INTRODUCTION

Plaintiff submits this memorandum of law in support of his Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Classes. The Parties' $1.13 million settlement satisfies all criteria for final approval. Plaintiff seeks an order: (1) certifying the settlement classes; and (2) approving as fair and adequate the class-wide settlement of this action as set forth in the Joint Stipulation of Class Action Settlement and the Second Addendum to the Settlement Agreement, attached as Exhibits A and B to the Declaration of Ossai Miazad.[1]

On April 18, 2017, the Court took the first step in the settlement approval process by preliminarily approving the Parties' Settlement Agreement; provisionally certifying the Settlement Classes[2] pursuant to Fed. R. Civ. P. 23 ("Rule 23"); appointing Outten & Golden LLP ("O&G") as Class Counsel; directing that notice be mailed to the Class Members; and setting a date for the final fairness hearing. ECF No. 24. Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation of settlement funds, and their right to opt out of or object to the settlement. Ex. C (McDermott Decl.). As of July 13, 2017, 4,605 Class Members have submitted claim forms, and no Class Members have objected to the settlement and only one Class Member has excluded herself. *Id.* ¶ 20. With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## BACKGROUND

### I.      Factual and Procedural Background

Plaintiff incorporates by reference the factual allegations and procedural history set forth in Plaintiff's Motion for Preliminary Approval. ECF No. 15.

---

[1]      Unless otherwise indicated, exhibits are attached to the Declaration of Ossai Miazad.
[2]      Unless otherwise indicated, capitalized terms have the same definition as the Settlement Agreement.

## II.     Summary of Settlement Terms

### A.     The Settlement Fund

Defendant has agreed to pay $1.13 million to cover payments to Class Members, and

Court-approved costs and fees including Class Counsel's attorneys' fees and costs, the

Settlement Administrator's fees and costs, and any Court-approved Service Awards.  Ex. A § 5.

### B.     Eligible Class Members

Class Members are individuals who fall within the FCRA Disclosure Class and/or FCRA

Consumer Report Class:

> **FCRA Disclosure Class:** All individuals who, during the applicable two-year statute of limitations period through July 17, 2015, applied for work with SIMOS and were provided with an Authorization and Disclosure Form.

> **FCRA Consumer Report Class:** All individuals who, during the applicable two-year statute of limitations period through October 19, 2015, may have been separated or not hired based on their background check results.

ECF No. 1 ¶¶ 46-47, ¶¶ 58-66 (First Claim for Relief), ¶¶ 67-77 (Second Claim for Relief).

Class Members were required to timely submit Claim Forms in order to receive a settlement

payment.  Miazad Decl. ¶ 31.  The deadline to submit a Claim Form is August 1, 2017.

### C.     Releases

All Class Members who do not exclude themselves from the settlement will release:

> any and all claims, whether known or unknown, that were or could have been alleged or asserted in the Lawsuit under the FCRA, including but not limited to claims for violation of 15 U.S.C. § 1681b(b)(2); violation of 15 U.S.C. § 1681b(b)(3) and any right to recover any and all damages available under 15 U.S.C. §§ 1681o and 1681n, which shall include the right to recover actual damages, statutory damages, punitive damages, reasonable attorneys' fees and costs, unpaid wages, penalties, front pay, back pay, emotional distress and all interest associated with unpaid wages.

Ex. A (Settlement Agreement) § 8.

In addition, Plaintiff, who will apply separately for a service award, will provide a general release of all employment-related claims against Defendant. *Id.* §§ 4, 9.

### D.     Allocation Formula

All Class Members who submit a valid claim will receive an uncapped proportionate share of the total net settlement fund (*i.e.*, the fund after Settlement Expenses have been subtracted). To reflect that FCRA Consumer Report Class Members may have a stronger claim for increased damages, that claim is allocated a larger proportionate share of the net settlement fund. Specifically, Class Members will receive one point for being a member of the FCRA Disclosure Class and 1.5 points for being a member of the FCRA Consumer Report Class. Each Class Member will then receive a proportionate share based on the total points for Class Members who submitted claim forms. *See* Miazad Decl., Ex. B (Settlement Addendum) at 2.

The amended Settlement Agreement also allows for a *cy pres* award to the Safer Foundation if there are uncashed settlement checks result in undistributed funds and, by the judgment of the Settlement Administrator, it would be economically infeasible to send a second distribution. Miazad Decl. ¶ 36. There is no reversion to Defendant. *Id.* ¶ 37.

### E.     CAFA Notice

The Settlement Administrator sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA") on April 24, 2017. *See* 28 U.S.C. § 1715(d); Ex. C (McDermott Decl.) ¶ 4. The 90-day CAFA notice period concluded on July 23, 2017. *Id.*

### F.     Settlement Administration

The Parties selected JND Legal Administration, an experienced class action claims administrator, to administer the settlement. Miazad Decl. ¶ 38. The Settlement Administrator's costs and expenses, capped at no more than $75,000, will be paid from the Gross Settlement Amount. *See* Ex. A § 5(d); Miazad Decl. ¶ 39.

On May 23, 2017, the Settlement Administrator mailed 20,828 Court-approved Notices. Ex. C (McDermott Decl.) ¶ 7. On June 30, 2017, the Settlement Administrator mailed reminder postcards to 17,656 Class Members who had not submitted a Claim Form or Exclusion Request form. *Id.* ¶ 11. After the Notices were mailed, the Settlement Administrator received 2,700 Notices returned as undeliverable without updated addresses. *Id.* ¶ 8. On July 13, 2017, the Settlement Administrator performed address traces, and re-mailed Notices to Class Members for whom new addresses were located. *Id.* There are a total of 1,185 Class Members for whom Notices were ultimately undeliverable. *Id.*

Approximately 22 percent of Class Members have returned claim forms. *Id.* ¶ 20. Class Counsel believes that a 22 percent return for a large FRCA class is especially high. Miazad Decl. ¶ 41.

### G. Objections and Opt-Outs

The Notice advised Class Members that they could object to or exclude themselves from the settlement. ECF No. 16-1 (Notice). One class member excluded herself and no Class Member objected to the settlement. Ex. C (McDermott Decl.) ¶ 18.

## ARGUMENT

### I. The Settlement Classes Meet the Legal Standard for Class Certification.

On April 18, 2017, the Court preliminarily certified the Settlement Classes. ECF No. 24. Plaintiff respectfully requests that the Court grant final certification because the Settlement Classes meet all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").[3]

---

[3]     Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find

## A.    Numerosity

Numerosity is presumptively met where the class members number 40 or more. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009).  The putative classes easily satisfy this requirement: the FCRA Disclosure Class consists of 19,128 individuals and the FCRA Consumer Report Class consists of a subset of 1,811 individuals.  *See* Ex. A, § 3.

## B.    Commonality

The proposed Settlement Classes satisfy the commonality requirement, which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  The requirement requires only "questions of law or fact common to the class."  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  Some factual variation among class members will not defeat a class action.  *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

This case involves numerous common issues.  Plaintiff and Class Members all share the common contentions that the form they signed authorizing a consumer report was defective and/or that they were denied employment without being provided pre-adverse action notice packets.  These common factual and legal questions satisfy commonality for settlement purposes. *See Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 417-18 (E.D. Va. 2016) (finding commonality through allegations of defective authorizations for consumer reports and that pre-adverse action notices were never sent).  Plaintiff also alleges that Defendant's violations were willful.  Courts routinely find that the question of willfulness is a common question.  *Id.* at 417.

---

that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).

### C. Typicality

Typicality is also satisfied where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chic. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–597 (7th Cir. 1993). The fact that there is some factual variation among the class's grievances will not defeat a class action. *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980).

Plaintiff's claims arise from the same factual and legal circumstances as the Class Members' claims. Like the putative Classes, Plaintiff signed an allegedly defective form authorizing a consumer report *and* was denied employment because of his background check without having been provided pre-adverse action notice packets. *See* ECF No. 1 ¶¶ 17-18, 25-27. Typicality is met because Plaintiff was "subjected to the same [challenged] procedures as all putative class members." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 238, 2016 WL 1070819, at *14 (E.D. Va. Mar. 15, 2016).

### D. Adequacy of the Named Plaintiff

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts ask whether a named plaintiff: (1) has "antagonistic or conflicting claims with other members of the class;" (2) has "a sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (3) has counsel that is "competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007) (quotation marks omitted). Plaintiff meets the adequacy requirement because there is no evidence that he has interests that are antagonistic to or at odds with those of putative Class Members, and suffered the same alleged violations of the FCRA as members of both putative classes.

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions Predominate

Predominance requires that proposed classes be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 1997). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Nicholson v. UTI Worldwide, Inc.*, No. 09 Civ. 722, 2011 WL 1775726, at *7 (S.D. Ill. May 10, 2011) (defendant's policy of not paying overtime predominated). "The presence of some individual questions is not fatal." *Katz v. ABP Corp.*, No. 12 Civ. 4173, 2014 WL 4966052, at *2 (E.D.N.Y. Oct. 3, 2014)

Here, Plaintiff's common contentions—that Defendant had a uniformly defective form authorizing consumer reports and uniformly failed to provide individuals with pre-adverse action notice packets—predominate over any issues affecting only individual Class Members.

### 2.    A Class Action Is a Superior Mechanism

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action.[4] "[C]lass certification is 'a sensible and legally permissible alternative to . . . individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs.'" *Pella Corp. v. Saltzman*, 606 F.3d 391, 393

---

[4]    These include: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)

(7th Cir. 2010); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Here, potential recovery for putative Class Members is comparatively modest—even if Class Members were to recover full statutory damages. *See, e.g.*, *Thomas*, 312 F.R.D. at 425 (in FCRA cases, "potential class members' claims for statutory damages are small when considered in comparison to the effort it would take to assert them in court"). Concentrating litigation in this Court will achieve economies of scale, conserve the resources of the judicial system, and avoid the waste and delay of repetitive proceedings and inconsistent adjudications. *See, e.g.*, *id.* at 426; *Manuel*, 2015 WL 499549, at *18. Moreover, "many plaintiffs will not be aware that their rights were violated because of the technical nature of the FCRA and thus would not be able to bring a suit" without this settlement. *Thomas*, 312 F.R.D. at 425 -26.[5] A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiff and Class Members' claims.

## II.    The Proposed Settlement Is Fair, Reasonable and Adequate.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

---

[5]     "Manageability" need not be considered in deciding whether to certify a class for settlement purposes only, as the litigation would not proceed on the basis of the certified settlement class if settlement is unsuccessful. *Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal quotation marks and citation omitted). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine a settlement's fairness, reasonableness and adequacy in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted).

The Seventh Circuit has endorsed many settlements negotiated prior to class certification. *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 300 (7th Cir. 1985); *McDonald v. Chic. Milwaukee Corp.*, 565 F.2d 416, 420, 430 (7th Cir. 1977).

### A. The Settlement Is Fair, Reasonable, and Adequate.

A court's review of a negotiated settlement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted). Courts evaluate "the general principles . . . of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Id.* at 1197.

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014). Courts in this Circuit consider five factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to

9

settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and

discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th

Cir. 2006). These factors weigh in favor of final approval.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (Factor 1).

Defendant has agreed to settle this case for $1.13 million, which is a substantial amount,

especially considering the statutory limits on recovery. If Plaintiff prevailed at trial, the

maximum recovery for FRCA statutory claims is limited to a range of not more than $100-

$1,000. Through this settlement, Class Members are entitled to recover a proportionate share of

the net settlement fund and based on the number of valid claim forms submitted by Class

Members. To date 4,605 claims have been filed out of a total Class of roughly 20,000,

representing 22 percent of the total population. Ex. C (McDermott Decl.) ¶ 20.[6] Based on this

number and if the Court grants Plaintiff's Motion for Attorney's Fees and Reimbursement of

Expenses, each FCRA Consumer Report Class claim will receive approximately $142.24, and

each FCRA Disclosure Class claim will receive an additional amount of approximately $213.36.

The settlement represents significant value given the attendant risks of litigation—including

surviving a motion to dismiss, attaining class certification, overcoming motions to decertify any

class, succeeding on all claims at summary judgment and trial, and surviving any appeal.

In evaluating the strength of Plaintiff's case on the merits balanced against the proposed

settlement, courts refrain from reaching conclusions on issues that have not been fully litigated.

*Patterson*, 528 F.2d at 114 (collecting cases). Because "[t]he essence of settlement is

compromise," *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), courts

---

[6] The deadline for the Claim Forms is August 1, 2017. Plaintiff will provide the Court with a supplemental memorandum that includes an updated count of submitted Claim Forms and estimated awards after August 1, 2017.

should not reject a settlement "solely because it does not provide a complete victory[.]"  *Isby*, 75 F.3d at 1200.

Establishing both liability and damages would require significant factual development. Plaintiff likely would have had to survive a motion to dismiss as to his claims.  The Supreme Court also recently issued a decision on standing in the FCRA context, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which might have subjected Plaintiff to further briefing.  Although Plaintiff is confident that he would survive a motion to dismiss,[7] there is risk.

If Plaintiff's claims survived, he would have faced risks in class certification and summary judgment after a lengthy discovery process.  Although FCRA cases are often certified, there is nonetheless a legitimate risk that the Court could conclude that individualized factual inquiries preclude class treatment.  *See, e.g.*, *Delmoral v. Credit Prot. Ass'n, LP*, No. 13 Civ. 242, 2015 WL 5793311, at *6 (E.D.N.Y. Sept. 30, 2015).  Then, if at summary judgement Plaintiff lost on the issue of willfulness, recovery of statutory damages would have been barred. Surviving those motions, a trial on the merits would involve significant risk as to both liability and damages.  While Plaintiff strongly believes he would ultimately defeat Defendant's defenses and establish liability, this would require significant litigation, which is inherently uncertain. The proposed settlement alleviates this uncertainty.

The settlement provides an immediate substantial recovery that meets, if not exceeds,

---

[7]  Post-*Spokeo*, multiple courts have held that plaintiffs have standing under the FCRA and, specifically, for Section 1681b(b)(2) and (3) claims.  *See, e.g.*, *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (1681b(b)(2) claims); *Hargrett v. Amazon.com DEDC LLC*, __ F. Supp. 3d __, No. 15 Civ. 2456, 2017 WL 416427, at *4-6 (M.D. Fla. Jan. 30, 2017) (same); *Feist v. Petco Animal Supplies, Inc.*, 218 F. Supp. 3d 1112, 1115-16 (S.D. Cal. 2016) (same); *Meza v. Verizon Commc'ns, Inc.*, No. 16 Civ. 739, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (same); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633-38 (E.D. Va. 2016) (same with 1681b(b)(2) and (3) claims); *see also Chapman v. Dowman, Heintz, Boscia & Vician, P.C.*, No. 15 Civ. 120, 2016 WL 3247872, at *1 & n.1 (N.D. Ind. June 13, 2016) (granting final approval of FDCPA settlement and finding "*Spokeo* largely reiterated long-standing principles").

what the Class Members could obtain through trial. If Plaintiff proved willfulness, the putative

Class Members' best outcome would be damages between $100 and $1,000 per claim. 15 U.S.C.

§ 1681n. Through this settlement, Class Members will receive approximately $142.24 or

$355.59, depending on the classes to which they belong. These potential recoveries exceed the

range of acceptable recoveries approved by courts in FCRA settlements. *See, e.g.*, *White v. First*

*Am. Registry, Inc.*, No. 04 Civ. 1611, 2007 WL 703926, at *2-3 (S.D.N.Y. Mar. 7, 2007)

(approving payments up to $100 for class members with *pro rata* reduction if total claims

exceeds available balance after settlement expenses were deducted); *Domonoske v. Bank of Am.,*

*N.A.*, 790 F. Supp. 2d 466, 470 (W.D. Va. 2011) (approving proportional payments up to $100,

but no less than $2).[8] This factor weighs in favor of final approval.

### 2.     Litigation Would Be Complex, Costly, and Long (Factor 2).

By reaching a favorable settlement now, Plaintiff seeks to avoid significant expense and

delay, and instead ensure recovery for the Class Members. "[A]n integral part of the strength of

a case on the merits is a consideration of the various risks and costs that accompany continuation

of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d at 298, 309 (7th Cir. 1985).

Continued litigation carries with it a decrease in the time value of money, for "[t]o most

people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v.*

*Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). The proposed settlement, on the other

hand, provides immediate benefits.

---

[8]     *See also Watkins v. Hireright, Inc.*, No. 13 Civ. 1432, 2016 WL 1732652, at *7 (S.D. Cal.
May 2, 2016) (preliminarily approving settlement where cap to recovery was $200, but parties
estimated each class member would receive approximately $58.00); *Manuel*, 2016 WL 1070819,
at *2 (finally approving settlement where class members would receive either $35 or $75
dollars); *Syed v. M-I LLC*, No. 14 Civ. 742, 2016 WL 310135, at *8 (E.D. Cal. Jan. 26, 2016)
(finally approving settlement where class members would receive approximately $16).

As outlined above, if litigation were to continue, Plaintiff would have to survive a motion to dismiss, and then extensive discovery would be required to establish liability and damages, and a possible trial and appeal. While Class Counsel strongly believe that Plaintiff would ultimately establish Defendant's liability, again, this would require significant factual development. The proposed settlement avoids further expense, delay and uncertainty. This factor weighs in favor of final approval.

### 3. The Reaction of the Class Members Have Been Positive (Factor 3).

The absence of objections by class members is significant in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1166 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many class members").

Here, there have been no objections to this settlement, and only one person has opted out. Ex. C (McDermott Decl.) ¶¶ 15-18. Moreover, 4,605 claims have been filed, representing 22 percent of the total population. *Id.* ¶ 20.[9] This factor supports final approval.

### 4. Competent Counsel Endorse this Settlement Agreement (Factor 4).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *see Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *Id.*

Class Counsel are competent class action attorneys. *See, e.g.*, *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (finding O&G "bring to the case a wealth of class action litigation experience" and were adequate to represent approximately half-million person Black and Latino job applicant class in background check litigation); *Zolkos v. Scriptfleet Inc.*, 2014

---

[9]     Again, Class Counsel will supplement these numbers once the claims period has closed.

WL 7011819, at *3 (finding O&G met Rule 23(a)(4)'s adequacy requirements for purposes of class settlement).

Class Counsel also are realistic and understand that the resolution of liability issues, the outcome of the trial, the inevitable appeals process, and the ultimate collection risk are inherently uncertain in terms of outcome and duration. *See supra* Argument § (II)(A)(1). Defendant also endorsed this settlement, as evidenced by its representative's signature on the Settlement Agreement. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5).

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough discovery to recommend settlement. Courts regularly approve settlements at a similar stage in discovery. *See Taifa v. Bayh*, 846 F. Supp. 723, 728-29 (N.D. Ind. 1994), *aff'd sub nom Isby*, 75 F.3d at 1199-1200 (approving settlement early in case where the parties had conducted a thorough investigation of the background and facts pertinent to the claims). Courts also encourage parties to settle class actions early, without expending unnecessary resources. *See Yuzary v. HSBC Bank USA*, No. 12 Civ. 3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("[E]arly settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.") (citations omitted).

Here, the Parties engaged in significant investigation before entering negotiation discussions and in preparation for the Parties' mediations. *See* ECF No. 15 at 14. Accordingly, this factor favors final approval. *See, e.g.*, *Katz*, 2014 WL 4966052, at *1 (granting preliminary approval of FCRA settlement based on "pre-mediation discovery and arms-length negotiations").

14

**6.      Defendant's Ability to Withstand a Greater Judgment is Unknown and Does Not Preclude Settlement Approval.**

Although Defendant likely could have withstood a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp.2d. 164, 178 n.9 (S.D.N.Y. 2000). Whether Defendant could withstand a greater judgment is especially unimportant here where the recovery per person for Class Members who submit Claim Forms is well within the range of the statutory recovery for a claim. *See supra* Argument § (II)(A)(I). Therefore, this factor is neutral and does not preclude the Court from granting final approval.

                                        ***

In sum, the settlement, on its face, is "fair, reasonable, and adequate," and not the product of collusion. *See Isby*, 75 F.3d at 1198, 1200.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Final Approval of Class Action Settlement and Certification of Settlement Classes, and enter the Proposed Order filed herewith.

Dated: July 18, 2017
      New York, New York

Respectfully submitted,

*/s/ Ossai Miazad*
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Ave, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

Paul W. Mollica
161 North Clark Street
Suite 1600
Chicago, Illinois 60601
Telephone: (312) 809-7010
Facsimile: (312) 809-7911

***Attorneys for Plaintiff and the Putative
Settlement Classes***

16

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **July 18, 2017**, a copy of the foregoing document was filed

electronically and service made by certified mail to anyone unable to accept electronic filing.

Notice of this filing will be sent by email to all parties by operation of the Court's electronic

filing system or by certified mail for anyone unable to accept electronic filing.  Parties may

access this filing through the Court's system.

*/s/ Ossai Miazad*  
Ossai Miazad
